# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CONNECTICUT INDEMNITY COMPANY**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**MIGUEL CARELA, SANCHEZ REDDICKS, PINNACLE FREIGHT LINES, INC., JAMES A BARRETT, JR., JAMES A. BARRETT, as Guardian ad Litem for JAMES A. BARRETT, JR., STEPHEN GORDON, LEGION INSURANCE COMPANY, NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, INSURANCE COMPANY "Y" and INSURANCE COMPANY "X",**<br><br>    **Defendants.** | 05-CV-1988 (WJM)<br><br>**AMENDED OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

Gregory Gerald Jaeger
Law Office of Gregory Jaeger
654 Georges Road
2nd Floor
North Brunswick, NJ 08902

Jared T. Hay
Salmon, Ricchezza, Singer & Turchi LLP
1700 Market Street
Suite 3110
Philadelphia, PA 19103
(*Attorneys for Plaintiff Connecticut Indemnity Company*)

Frank D. Costantini
Jones Hirsch Connors & Bull
1 Battery Park Plaza, 28th Floor
New York, NY 10004
(*Attorney for Defendants Miguel Carela and Pinnacle Freight Lines, Inc.*)

Jaymie Lynn Einhorn
Peltz & Walker
222 Broadway
25th Floor
New York, NY 10038
(*Attorney for James A. Barrett, Jr. and Steven Gordon*)

John Burke
Burke & Potenza, PC
161 Madison Ave.
PO Box 2037
Morristown, NJ 07962-2037
(*Attorney for New Jersey Property-Liability Guaranty Association*)

**MARTINI, U.S.D.J.:**

Presently before the Court are cross-motions for summary judgment by Plaintiff Connecticut Indemnity Company ("Connecticut Indemnity") and Defendants Miguel Carela ("Carela") and Pinnacle Freight Lines, Inc. ("Pinnacle"). The parties seek a declaration regarding coverage under a "non-trucking" automobile liability insurance policy issued by Connecticut Indemnity. There was no oral argument. Fed. R. Civ. P. 78. For the following reasons, Connecticut Indemnity's motion for summary judgment is **DENIED** and Carela and Pinnacle's motion for summary judgment is **GRANTED**.[1]

## BACKGROUND

This declaratory judgment action stems from a motor vehicle accident that occurred on January 31, 2000, on I-87 near the town of New Baltimore, New York. The accident involved a 1995 Freightliner tractor-truck (the "Truck") owned by Carela and leased to Pinnacle, a federally certified motor carrier. While driving the Truck on I-87, Carela struck a car owned and driven by Defendant Sanchez Reddicks. Defendants James A. Barrett Jr. ("Barrett Jr.") and Stephen Gordon ("Gordon") were passengers in the car. At the time of the accident, the Truck was leased to Pinnacle and was hauling a commercial freight trailer in Pinnacle's business.

Carela, Reddicks, Barrett Jr., and Gordon are residents of New York. Pinnacle is registered with the Federal Motor Carrier Administration with a business address in New York. Carela registered the Truck in New York, but garaged it at Pinnacle's yard in New Jersey. At the time of the accident, the Truck was marked "Lease to PFL." "PINNACLF [sic] FREIGHT

---

[1]     This Amended Opinion and the accompanying Amended Order replace this Court's July 30, 2007 Opinion (No. 58 on the docket) and Order (No. 59) addressing these same issues.

LINES," "S. KEARNY, NJ."

Two insurance policies covered the Truck.  The first policy was a "trucking" policy.  This covered the Truck when used for business's purposes.  Pinnacle obtained this insurance from Legion Insurance Company ("Legion").  The second policy was a "non-trucking" policy.  This covered the Truck when used for non-business purposes.  Carela obtained this insurance from Connecticut Indemnity.

It is Connecticut Indemnity's non-trucking policy that is at issue in this case.  The policy contained the following exclusion (the "Non-Trucking Exclusion"):

> This insurance policy does not apply to:
>
> 1.    A covered "auto" while used to carry property in any business.
>
> 2.    A covered "auto" while used in the business of anyone to whom the "auto" is rented, if the rental agreement requires the lessee to carry primary insurance for liability arising out of the lessee's use of the "auto."

(Jaeger Cert. Exh. C.)  The certificate of insurance also required Carela to be permanently leased to a federally certified motor carrier, such as Pinnacle.  In this regard, the certificate of insurance specified:

> THIS CERTIFICATE OF INSURANCE IS ISSUED BASED ON A WARRANTY BY THE CONTRACTOR THAT HE/SHE IS PERMANENTLY LEASED TO THE GOVERNMENTALLY REGULATED MOTOR CARRIER NAMED ON THIS CERTIFICATE.  ALL COVERAGE EXPIRES WHEN THE PERMANENT LEASE HAS BEEN BROKEN, CANCELLED, OR TERMINATED BY EITHER THE CONTRACTOR OR MOTOR CARRIER.

(Jaeger Cert. Exh. B.)  The certificate of insurance listed Pinnacle as the governmentally

regulated motor carrier.  By all accounts, the purpose of this requirement was to ensure the

availability of trucking insurance, since federally regulated motor carriers are required to carry

such insurance.  *See* 49 U.S.C. § 13906(a)(1); 49 C.F.R. § 387.7(a).

On July 25, 2003, Gordon and Clover M. Barrett, as guardian ad litem for Barrett Jr.,

filed a personal injury action against Pinnacle and Carela in the Supreme Court of New York,

Kings County.  Legion assumed the defense obligations of Carela and Pinnacle and settled the

case for its $1,000,000.00 policy limit.  The Commonwealth Court of Pennsylvania, though,

declared Legion insolvent before it ever issued the settlement draft.  Because Legion was

declared insolvent, the New Jersey Property-Liability Guaranty Association ("PLIGA") assumed

the obligations of Legion in this State pursuant to the New Jersey Property Liability Insurance

Guaranty Association Act, N.J.S.A. 12:30A-1 to 12:30A-20 (the "Act").

Under the Act, Barrett Jr. and Gordon must exhaust their rights under any other insurance

policy before recovering from PLIGA.  *See* N.J.S.A. 17:30A-12b.  Expecting that Barrett Jr. and

Gordon would look to its non-trucking policy for coverage, Connecticut Indemnity filed the

instant declaratory judgment action seeking a determination that it does not owe coverage for the

accident.  Specifically, Connecticut Indemnity argues that the Non-Trucking Exclusion applies

and, therefore, precludes coverage.  Furthermore, Connecticut Indemnity argues that it canceled

the policy prior to the accident for non-payment of premiums.  Carela and Pinnacle filed cross-

claims against Connecticut Indemnity seeking a declaration that it owes coverage.  This matter is

fully briefed and presently before the Court.

## STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and

4

the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment.  *See Anderson*, 477 U.S. at 247-48.  If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## **DISCUSSION**

### I.      **Choice of Law**

The parties first dispute which law applies to this matter.  Connecticut Indemnity argues that New Jersey law governs, while Carela and Pinnacle argue that New York law governs.  "Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law.  Where there is no difference between the laws of the forum state and those of the foreign jurisdiction, there is a 'false conflict' and the court need not decide the choice of law issue."  *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994) (citations omitted); *see also Zavala . Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 333 (D.N.J. 2005).

New Jersey and New York law conflict in two important ways that are relevant to this matter.  First, the states differ in how they assess the validity of business-use exclusions, such as

5

the Non-Trucking Exclusion.  Under New Jersey law, "so long as the truck is covered by an additional policy providing coverage for business use, such exclusionary language violates neither the requirements of N.J.S.A. 39:6b-1, nor the public policy of the State."  *Connecticut Indemnity v. Podeszwa*, 392 N.J. Super. 480, 482 (N.J. Super. Ct. App. Div. 2007).  Under New York law, however, the business-use exclusion is only valid if it "expressly provide[s] that it is only operative if the lessee [of the truck] has business use liability coverage in effect for the accident in question...."  *Royal Indem. Co. v. Providence Wash. Ins.*, 92 N.Y.2d 653, 658 (1998).

Second, New Jersey and New York differ on what constitutes a valid notice of cancellation of an automobile insurance policy.  Under New York law, every cancellation notice must include "a statement that proof of financial security is required to be maintained continuously throughout the registration period," along with a "notice ... indicating the punitive effects of failure to maintain continuous proof of financial security...."  Veh. & Traf. L. § 313[1](a).  Failure to include this statement deems the notice invalid.  *Barile v. Kavanaugh*, 67 N.Y.2d 392, 399 (1986); *Material Damage Adjustment Corp. v. King*, 1 A.D.3d 439, 440 (N.Y. App. Div. 2003).  New Jersey has no such requirement.  *See* N.J.S.A. §§ 29C-1 to 29C-13.

Because a conflict of laws exists, this Court, sitting in diversity, must apply New Jersey's choice of law rules.  *Klaxton v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *McFarland v. Miller*, 14 F.3d 912, 917 (3d Cir. 1994).  "Under New Jersey's choice of law rules ... the law of the place of contracting applies unless some other state has a 'dominant significant relationship' to the transaction."  *NL Indus. v. Commercial Union Ins. Co.*, 65 F.3d 314, 316 (3d Cir. 1995).  Therefore, the Court's first task is to determine the place of contracting for the Connecticut Indemnity policy.

The evidence presented by the parties regarding the place of contracting is sparse.  From what the Court knows, Carela obtained the non-trucking policy through an insurance broker located in New Jersey called "Cover Me Insurance."  The Court does not know, however, where Carela applied for the insurance, or where negotiations for the policy occurred.  Such facts are relevant to determining the place of contracting.  *See id*. ("If a company from another state uses an insurance broker to negotiate and purchase its insurance policies, then the place of contracting is the place where the broker negotiated the policies." (citing *Diamond Shamrock Chems. Co. v. Aetna Cas. & Sur. Co.*, 609 A.2d 440, 465 (N.J. App. Div. 1992))); *Polar Int'l Brokerage Corp. v. Investors Ins. Co. of Am.*, 967 F. Supp. 135, 141 (D.N.J. 1997) (holding that place of contracting is where insurance agent negotiated the policies); *Nat'l Starch & Chem. Corp. v. Great Am. Ins. Cos.*, 743 F. Supp. 318, 325 (D.N.J. 1990) (examining where the last act occurred to give the contract binding effect).

Regardless, this does not change the Court's analysis.  Even if the Court were to assume that the place of contracting occurred in New Jersey, as Connecticut Indemnity contends, the Court must still determine under New Jersey's choice of law rules whether another state (namely, New York) has a "dominant and significant relationship" to this matter.  As shown below, the Court finds that it does.

To determine whether New York has a "dominant and significant relationship," New Jersey courts consider the Restatement (Second) of Conflict of Laws §§ 6, 188, and 193 (1988).  *See Pfizer, Inc. v. Emplrs Ins.*, 712 A.2d 634, 637-38 (N.J. 1998); *Gilbert Spruance Co. v. Pa Mfrs. Ass'n Ins. Co.*, 629 A.2d 885, 888 (N.J. 1993); *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 417 A.2d 488, 491-93 (N.J. 1980).  The Restatement lists various factors and contacts

for courts to consider in determining whether the law of a state other than the place of contracting has the requisite dominant significant relationship.  They are:

> (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2).  Section 188 also lists several "contacts," according to the relative importance, to be considered in this analysis.  *Gilbert Spruance*, 629 A.2d at 888.  They are: (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicil, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(2).

In addition, § 193 of the Restatement explains that, in the context of casualty insurance contracts, the application of the contacts above and the concerns of § 6 should focus on determining which state "the parties understood to be the principal location of the insured risk during the term of the policy unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties...."  *Gilbert Spruance*, 629 A.2d at 889 (citation omitted); *see also* Restatement (Second) of Conflict of Laws § 193 cmt. c.

## A.     The Principal Location of the Insured Risk Under § 193

Since this case involves a casualty insurance contract, the Court shall begin by discussing the principal location of the insured risk.  The policy at issue here provided national coverage for a commercial truck.  Under such circumstances, the Restatement counsels that there may be no

principal location of the insured risk.  Restatement (Second) of Conflict of Laws § 193 cmt. a

("There may be no principal location of the insured risk in the case of contracts for the insurance

of things, such as ... trucks ... that are constantly on the move from state to state.").  Furthermore,

while Carela garaged the Truck in New Jersey near the border of New York, Connecticut

Indemnity provides little evidence showing that Carela mainly drove the Truck there.  In fact,

evidence consisting of International Registration Program ("IRP") records from 1999 indicate

that, near the time Carela entered into the policy, he believed that most of his travel occurred in

New York.[2]  Therefore, the Court affords the principle location of the insured risk little weight.

### B.      Factors for Determining a "Dominant and Significant Relationship Under § 6

Next, the Court must consider the factors for determining whether New York has a

---

[2]The IRP records, which were produced on March 31, 1999, indicate that Carela believed that nearly 80% of his travel occurred in New York, while only 1% occurred in New Jersey. (Costantini Decl. Exh. 10.)  Connecticut Indemnity attacks these records because they were prepared by Carela.  However, Connecticut Indemnity does not offer any facts refuting that these records accurately reflect Carela's belief on where the Truck mostly traveled near the time he entered into the policy.  Furthermore, since Carela prepared these records before the accident occurred, the Court has little reason to doubt the veracity of Carela's beliefs as stated in those records.

In addition, Connecticut Indemnity argues that Carela and Pinnacle spoliated evidence consisting of IRP trip records that he was required under law to maintain for six years.  These records, according to Connecticut Indemnity, would have shed light on where Carela principally used the Truck, thereby affecting the Court's choice of law analysis.  The idea, though, that Carela and Pinnacle should have foreseen the relevance of these documents, if they even existed, to a potential choice of law question occurring in a lawsuit is highly questionable.  This is especially so when you consider that Legion already settled the suit, leaving Carela and Pinnacle to reasonably believe the litigation was over.  Furthermore, Connecticut Indemnity comes forth with no evidence, either by way of deposition testimony or otherwise, showing that Carela and Pinnacle knew the importance of these records, or even that Carela and Pinnacle actually kept such records.  More importantly, though, Connecticut Indemnity puts forth no evidence that these records would have been useful to it.  The records, instead, could have further bolstered Carela's contention that he overwhelmingly used the Truck in New York, and not New Jersey.  Therefore, any finding that this conduct prejudiced Connecticut Indemnity would be purely speculative.

"dominant and significant relationship" under § 6.  In doing so, the Restatement counsels the Court to apply the various contacts listed under § 188.  Carela and Pinnacle argue that, based on policy consideration and the quality of the various contacts, New York has a stronger relationship to this matter than New Jersey.  As discussed below, the Court agrees.

### 1.     Needs of the Interstate System

Comment d to § 6 of the Restatement remarks that "choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them."  *Id*. § 6 cmt. d.  Common sense dictates that the needs of the interstate system would not be well-served if a trucker, such as Carela, could enter into New York with a non-trucking policy invalid under that State's laws, get into an accident injuring New York residents, yet nevertheless be subject to New Jersey's laws which deem such policies valid.  Such a result would not further harmonious relations between the two States.  Therefore, this factor weighs in favor of applying New York law.

### 2.     The Relative Policies of New Jersey and New York.

New York's policies clearly outweigh New Jersey's in this matter.  New York's public policy places tremendous importance on ensuring that victims of the negligent operation of motor vehicles have recourse to a financially responsible defendant.  Veh. & Traf. L. §§ 310(2), 388; N.Y. Ins. L. § 3420(e); *Hassan v. Montouri*, 99 N.Y.2d 348, 353 (2003); *Morris v. Snappy Car Rental*, 84 N.Y.2d 21, 27 (1994).  New York also has a strong interest to ensure that it "will not be burdened with the care of injured third persons unable to recover from the motorist and too impoverished to provide for their own needs."  *Barile*, 67 N.Y.2d at 398.  This concern weighs heavily in favor of New York.  New Jersey will not be required to care for the individuals injured

in the accident; New York will.

Furthermore, the contacts here favor New York.  Carela, the policy holder, was from New York.  According to him, he sent all premium payments from his New York address.  The accident also occurred in New York and everyone in the car was a New York resident.  In contrast, New Jersey's only real interest in this matter is somewhat attenuated: a New York resident who parked his truck in New Jersey contacted a New Jersey broker to negotiate an insurance policy with an insurance policy in Connecticut.  New York's policy of protecting innocent drivers on its roads would be severely weakened if the Court found, based on these contacts, that New Jersey's interest in the matter somehow controlled.  Restatement (Second) Conflict of Laws § 6. cmt. f (noting that a state "whose interests are most deeply affected should have its local law applied.").  Accordingly, this factor weighs in favor of applying New York law.

### 3.      Protection of Justified Expectations.

The parties here made no provision for choice of law.  It was not unforeseeable, though, that New York law would apply to this matter.  Connecticut Indemnity is a national insurance company that provided insurance to a policy-holder domiciled in New York, for a truck registered in New York and garaged in a state adjoining New York.  It was entirely foreseeable for Connecticut Indemnity to expect that Carela would travel through New York and even beyond.  Furthermore, Carela sent his insurance payments from New York.  Connecticut Indemnity also corresponded with Carela by sending him material, such as the cancellation notice and other documents, to his New York address.  Application of New York law to this policy is not out-of-line with the parties' expectations.

### 4.      The Basic Policies Underlying the Field of Law.

11

Regarding this factor, the Restatement counsels:

> This factor is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules. In such instances, there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved.

*Id*. cmt. h. The policies of New Jersey and New York are largely the same regarding coverage issues involving automobile accidents: both States seek to ensure that innocent victims of automobile accidents are able to recover compensation and not become wards of the state. They differ, though, in their treatment of non-trucking policies. It is arguable that New York best achieves its policy of compensating innocent accident victims by requiring non-trucking policies to be expressly conditioned on the presence of trucking insurance. This policy provides an added protection to innocent victims of accidents not present in New Jersey. Therefore, this factor weighs in favor of New York.

### 5.    Predictability and Uniformity of Result.

The parties here were free to choose the law which governed their contract, or make it clearer by explicitly designating a principle location of the insured risk. As explained above, it was objectively reasonable for the parties to conclude that New York law would otherwise apply.

### 6.    Ease in Determination.

This factor is more aspirational in nature than a strict requirement in a choice of law analysis. Here, no simple rule can be applied to the facts presented to the Court. By not choosing a particular law to govern the policy, or specifically indicating where the insured risk was located, the Court had to weigh the various policies surrounding this matter to determine

which law applies.

### C.    Conclusion Regarding Choice of Law

The totality of facts compels the Court to apply New York law.  New York has the stronger interest in regulating an automobile insurance contract involving a New York policy holder, an accident occurring on its roads, victims who reside in New York, and covering a truck registered in New York.  This is especially so since the facts regarding the principal location of the risk are sparse, the parties did not make a choice of law decision, and New Jersey's contacts to this matter are slight.  Accordingly, the Court shall proceed to evaluate the parties' various arguments under New York law.

## II.    Validity of the Non-Trucking Exclusion Under New York Law

New York's public policy regarding the validity of exclusions in insurance contracts is found in New York Vehicle & Traffic Law § 388, which provides, in relevant part:

> 1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.
> ....
> 4. All bonds executed by or policies of insurance issued to the owner of any vehicle subject to the provisions of this section shall contain a provision for indemnity or security against the liability and responsibility provided in this section....

N.Y. Veh. & Traf. L. § 388.  Section 388 "expresse[s] the policy that one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant."

*Continental Auto Lease Corp. v. Campbell*, 19 N.Y.2d 350, 352 (1967); *see also Morris*, 84 N.Y.2d at 29; *Transport Ins. Co. v. Protective Ins. Co.*, 647 F. Supp. 1381, 1383-84 (N.D.N.Y.

1986).

As noted earlier, New York courts take a much narrower approach than New Jersey courts in assessing the validity of non-trucking exclusions.  Specifically, New York courts look to the actual terms of the non-trucking exclusion to see whether its operation requires the existence of trucking insurance.  *See Conn. Indem. Co. v. Varela*, No. 94-1586, 1995 U.S. Dist. LEXIS 356, at *11 (S.D.N.Y. Jan. 18, 1995) ("This Court therefore finds that the validity of a bobtail exclusion depends on the precise terms of the policy."); *Conn. Indem. Co. v. QBC Trucking, Inc.*, 03-4257, 2005 U.S. Dist. LEXIS 7939, at *13 (S.D.N.Y. May 11, 2005) (upholding a non-trucking policy where it "conditions its business-use exclusion on the presence of an alternate collectible liability insurance for a vehicle when used for business purposes.").  Unlike New Jersey courts, it does not matter to New York courts whether trucking-use insurance is actually in place at the time of the loss.  *Compare Royal Indemnity*, 92 N.Y.2d at 657-58, *with Podeszwa*, 392 N.J. Super. at 482.  Instead, what matters is whether the terms of the non-trucking policy specifically require the existence of trucking-use insurance.  *Id*. at 658.  The purpose of this requirement is to ensure that no possible gap in coverage exists, and that a financially responsible party is available.  *Id*.

In *Royal Indemnity*, the New York Court of Appeals assessed the validity of a non-trucking exclusion upon certification from the Second Circuit Court of Appeals.  The court answered the following question in the negative:

> Whether a non-trucking-use exclusion from coverage in an insurance policy obtained by the owner of a commercial vehicle is valid under New York law, despite the absence of express language in the policy stating that the exclusion is effective only if the vehicle's lessee is required to obtain insurance coverage, where the insurer has

14

> established that its standard underwriting policy is not to issue a policy containing such an exclusion unless the vehicle owner has provided proof that the vehicle's lessee has insurance coverage.

*Id*. at 656.  In *Royal Indemnity*, a tractor-trailer leased by a federally certified motor carrier struck a bicyclist.  The bicyclist's guardian ad litem filed suit in state court.  The motor carrier had a trucking policy, and the lessor of the tractor-trailer carried a non-trucking policy.  The trucking insurer then settled the case and looked to the non-trucking carrier for contribution.  A declaratory judgment suit followed, and the trial court declared the non-trucking exclusion invalid.

The Court of Appeals agreed with the trial court that the non-trucking exclusion was invalid.  *Id*. at 657.  Although a trucking insurance policy was in place at the time, and the lessee was required to maintain sufficient insurance as a motor carrier under federal law, the Court of Appeals found such facts irrelevant.  *Id*. at 657-58.  Instead, the Court of Appeals relied on the requirement under § 388 that "'all policies of insurance' ... contain a provision guaranteeing indemnity against liability arising from permissive operation of the owner's vehicle...."  *Id*. at 658 (citing N.Y. Veh. & Traf. L. § 388[4].).  Without such an express requirement in the policy, the Court of Appeals noted that "truckers coverage might not continue to be in effect at some later date when an accident occurs, due for example, to a cancellation or lapse of the lessee's policy."  *Id*.  The Court of Appeals then summarized its holding as:

> The public policy of Vehicle and Traffic Law § 388 ... requires that the owner's liability policy must provide the assurance that a party injured by the negligent operation of a motor vehicle has "recourse to a financially responsible defendant."  Because the [non-trucking] exclusion in [the] policy does not expressly provide that it is only operative if the lessee has business use liability coverage in effect for the accident in question, the exclusion violates public policy and is

void.

*Id*. (citations omitted); *see also QBC Trucking, Inc.*, 2005 U.S. Dist. LEXIS 7939, at *12

(describing *Royal Indemnity* as holding that "the business-use exclusion was void not because of

an *actual* gap in coverage, but because of a *potential* gap in coverage.") (emphasis in original).

In *QBC Trucking*, the Southern District of New York upheld a non-trucking exclusion in

a Connecticut Indemnity policy.  Specifically, the non-trucking exclusion provided that coverage

did not apply to:

> a.  A covered "auto" while used to carry property in any business.
>
> b.  A covered "auto" while used in the business of anyone to whom
> the "auto" is rented, if the rental agreement requires the lessee to
> carry primary insurance for liability arising out of the lessee's use of
> the "auto."

*Id*. at *4.  The non-trucking exclusion, though, also provided:

> *However, the above exclusions apply only if there is other liability
> insurance which is valid and collectible, applicable to the covered
> "auto," which provides the minimum kinds of insurance required by
> law and which meets the minimum limits specified by the compulsory
> or financial responsibility laws of the jurisdiction where the covered
> "auto" is being used or the minimum limits specified by any law
> governing motor carriers of passengers or property, whichever is
> applicable.*

*Id*. at *4-5 (emphasis in original).  The court found this non-trucking exclusion to be valid under

New York law because it "conditions its [non-trucking] exclusion on the presence of an alternate

collectible liability insurance for a vehicle when used in business purposes."  *Id*. at *13.

Specifically, the court held that New York public policy was not violated by the exclusion

because "any potential gap in insurance is bridged by the contingent nature of the exclusion."  *Id*.

at *13.

The instant matter is more like *Royal Indemnity* than *QBC Trucking*. The Non-trucking Exclusion contained in Connecticut Indemnity's policy is not conditioned on the presence of trucking insurance. For instance, it did not contain the language in the policy in *QBC Trucking*. Instead, the policy in this case required that Carela be under long-term lease to a federally certified motor carrier. This, by implication, would require Carela to be insured for the business use of the truck. However, the entire policy – not just the non-trucking exclusion – was conditioned on the presence of a long term lease. This is made clear in the warranty section of the certificate of insurance, which provides:

> THIS CERTIFICATE OF INSURANCE IS ISSUED BASED ON A WARRANTY BY THE CONTRACTOR THAT HE/SHE IS PERMANENTLY LEASED TO THE GOVERNMENTALLY REGULATED MOTOR CARRIER NAMED ON THIS CERTIFICATE. ALL COVERAGE EXPIRES WHEN THE PERMANENT LEASE HAS BEEN BROKEN, CANCELLED, OR TERMINATED BY EITHER THE CONTRACTOR OR MOTOR CARRIER.

(Jaeger Cert. Exh. A.) By the terms of this warranty, the failure of Carela to maintain his long term lease with Pinnacle, which would result in the absence of trucking insurance, would cause the *entire* non-trucking policy to be canceled – not just the Non-Trucking Exclusion. This would create the very "gap" in coverage that New York courts seek to prevent. On the other hand, if the policy expressly provided that the Non-Trucking Exclusion only applied if there were trucking insurance, such as the policy in *QBC Trucking* did, the failure of Carela to maintain his long term lease with Pinnacle would not result in the cancellation of his entire policy – the remainder of the policy would still survive and provide coverage for the business-use of the Truck. The potential gap in coverage created by Connecticut Indemnity's policy is therefore repugnant to New York

policy.[3]  As a result, it is invalid.  Absent any other defense Connecticut Indemnity may have, it

must provide coverage to Carela for the loss.

## III.     Cancellation of the Policy

Connecticut Indemnity next argues that it cancelled the policy prior to the accident

because Carela failed to pay premiums owed.  The record shows that Connecticut Indemnity

mailed a notice of cancellation to Carela on January 13, 2000, to be effective January 29, 2000

(i.e., two days before the accident).  (Jaeger Cert. Exh. P.)  According to Connecticut Indemnity,

this notice of cancellation was valid and, therefore, Carela is not entitled to coverage.

The Court disagrees.  As mentioned above, New York law requires insurance cancellation

notices to include: (1) "a statement that proof of financial security is required to be maintained

continuously throughout the registration period"; and (2) "a notice prescribed by the

commissioner indicating the punitive effects of failure to maintain continuous proof of financial

security and actions which may be taken by the insured to avoid such punitive effects."  N.Y.

Veh. & Traf. L. § 313[1][a].  These statements are required for a valid notice of cancellation.  *See

Barile*, 67 N.Y.2d at 392; *Material Damage Adjustment Corp. v. King*, 1 A.D.2d at 440.

Furthermore, Connecticut Indemnity offers no proof that it filed a notice of cancellation with the

Commissioner of the New York State Department of Motor Vehicles within 30 days of the

effective date of cancellation.  N.Y. Veh. & Traf. L. § 313[2][a].  This is also a requirement for

valid notice of cancellation.  *Chubb Group of Ins. Cos. v. Williams*, 14 A.D.3d 561, 562 (N.Y.

App. Div. 2005); *Merchs. & Bus. Men's Mut. Ins. Co. v. Williams*, 295 A.D.2d 614, 615 (N.Y.

---

[3]It is likely that Connecticut Indemnity added the expression found in *QBC Trucking* to
its non-trucking policies for this very reason.

App. Div. 2002). Because of these infirmities, Connecticut Indemnity's notice of cancellation is invalid.

## IV.     The Limitation of Liability Endorsement

Connecticut Indemnity argues that, if the non-trucking exclusion is invalid, its exposure should be limited to the minimum amount required by the financial responsibility laws of the applicable state – here, New York.  In making this argument, it relies on Endorsement #2 to its policy, which states:

> We agree with YOU that if any of the provisions of the [Non-Trucking Exclusion] are held to be void or unenforceable under the law of any jurisdiction, for reasons of public policy, violation of statute, or otherwise, WE will not pay any sums in excess of the minimum amounts required by the Financial Responsibility Laws of such jurisdiction, and then only after all other valid and collectible insurance available to the Named Insured, or which would be available to the Named Insured in the absence of this policy, has been exhausted.

(Jaeger Cert. Exh. G.)  In *Connecticut Indemnity Co. v. Hines*, 40 A.D.3d 903 (N.Y. App. Div. 2007), the Appellate Division found this provision valid under New York law.  Specifically, the *Hines* court relied on a statement by the Court of Appeals in *Royal Indemnity* which addressed whether, in light of the invalid non-trucking exclusion, coverage should revert to the state mandatory coverage.  *Id*.  On this point, the Court of Appeals in *Royal Indemnity* noted:

> Since the non-trucking-use exclusion is avoid as against public policy, the policy must be read as if the exclusion did not exist. *Where, as here, the policy does not contain a term stating that coverage is limited to the statutory minima* ..., if a non-trucking-use exclusion is found to be invalid, no such limitation will be read into the policy (*Planet Ins. Co. v. Gunther*, 160 Misc. 2d 67, 70, 74; *R.E. Turner, Inc. v. Conn. Indem. Co.*, 925 F. Supp. 139 (W.D.N.Y.)....)

92 N.Y.2d at 659 (emphasis added) (citations omitted).  The court in *Hines* read the italicized

language as implicitly holding that, where a policy contains a limitation on liability as the one in this case, such a provision will apply when a non-trucking exclusion is deemed invalid.

This Court cannot agree with *Hines*.  In finding that coverage did not revert to the state minimum, the Court of Appeals in *Royal Indemnity* specifically cited two decisions: *Planet Insurance v. Gunther* and *R.E. Turner, Inc. v. The Connecticut Indemnity Company*.  Both decisions actually found such a limitation on liability void.  For instance, in *Planet Insurance*, the court found a clause identical to the one before this Court invalid.  *Planet Ins.*, 160 Misc. 2d at 73-74 (stating that "the presence or absence of language in the [non-trucking] policy insuring at minimum standards ... if part of the policy is declared void, also will not change the result.").

The court in *Planet Insurance* stated the reasoning behind its holding:

> Indeed, the language of [the limitation on liability clause] is not given effect where an exclusion is voided on public policy grounds because the policy of insurance must be deemed to provide the coverage it otherwise specifies as if the endorsement does not exist, so as to provide full coverage to the insured and afford innocent persons adequate financial resources.

*Id*. at 74 (citing *Rosado v. Eveready Ins. Co.*, 34 N.Y.2d 43; N.Y. Ins. L. § 5107[a], [b]).

Therefore, the *Hines* court incorrectly read *Planet Insurance* as standing for the proposition that such savings clauses are valid.  In fact, *Planet Insurance* held the opposite.

Furthermore, in *R.E. Turner, Inc.*, which the Court of Appeals relied upon in *Royal Indemnity*, the court likewise invalidated a clause identical to the one presently before the Court in a case involving Connecticut Indemnity.  The court noted that, "[p]ermitting [Connecticut Indemnity] to limit its liability even in cases where its policy exclusion is found to be invalid would render the finding on the issue of validity essentially meaningless."  925 F. Supp. at 149-

20

50. Therefore, the court in *R.E. Turner* held that "as the [non-trucking] exclusion is invalid, the policy should be interpreted as if the exclusion did not exist." *Id.* at 150 (citing *Transp. Ins. Co. v. Protecting Ins. Co.*, 696 F. Supp. 870, 873 (S.D.N.Y. 1998)); *see also Conn. Indem. Co. v. 21st Century Transp. Co., Inc.*, 186 F. Supp. 2d 264, 276-278 (E.D.N.Y. 2002) (holding that an identical limitation of liability is invalid under *Royal Indemnity*).[4]

Accordingly, the Court finds that the Endorsement #2 is invalid. Therefore, Connecticut Indemnity's policy must be interpreted as providing full coverage. In this case, that amount is $500,000.

## V.     Remaining Arguments

### A.       Whether Pinnacle is an Insured Under the Connecticut Indemnity Policy.

Pinnacle argues that it is an insured under the Connecticut Indemnity policy. The Court agrees. The policy provides coverage to "[a]nyone liable for the conduct of an 'insured' described above but only to the extent of that liability." (Costantini Decl. Exh. 13.) As noted earlier, Pinnacle, as a federally certified motor carrier, was required to carry trucking insurance to cover the Truck. In this case, Pinnacle's trucking insurance was liable for the loss because Carela was using the Truck in Pinnacle's business. Accordingly, Pinnacle was "liable for the conduct of an 'insured,' namely Carela. Therefore, by its terms, the Connecticut Indemnity policy covers Pinnacle.

### B.       Whether Connecticut Indemnity is Obligated to Defend and Indemnify

---

[4]The court in *Hinds* misread the quoted passage from *Royal Indemnity*. In *Royal Indemnity*, the Court was referring to a provision providing coverage in the amount of the state mandatory minimum (i.e., a policy limit). It was not referring to a limitation on liability if the non-trucking provision was declared invalid. This is clear from the cases cited immediately after the paragraph, which this Court discussed.

### Carela and Pinnacle as a Primary Insurer

Connecticut Indemnity argues that PLIGA must defend and indemnify Carela and Pinnacle under the terms of Legion's policy.  Carela and Pinnacle, on the other hand, argue that Connecticut Indemnity is obligated to defend and indemnify them as primary insurers.  The Court agrees with Carela and Pinnacle.  Because Legion has been declared insolvent, it has uncollectible insurance.  *American Lumbermans Mut. Cas. Co. v. Lumber Mut. Cas. Ins. Co.*, 251 A.D. 231, 235 (N.Y. App. Div. 1937).  Furthermore, since Connecticut Indemnity's policy is written as a primary insurance policy, *see Gladstone v. D. W. Ritter Co.*, 133 Misc. 2d 922, 927 (N.Y. Sup. Ct. 1986), and its non-trucking exclusion is invalid under New York law, Connecticut Indemnity must defend and indemnity Carela and Pinnacle as a primary insurer.  *See Royal Indemnity*, 952 F. Supp. at 128 ("When Defendant's policy is read without the bobtail exclusion, Defendant becomes a primary insurer....").

### C.     Whether Pinnacle Has an Indemnity Claim Against Carela

Pinnacle next contends that it may pursue an indemnity claim over Carela.  It points to a provision of its lease with Carela, which states that Carela "agreed to indemnity and hold [Pinnacle] harmless against all claims and demands of third persons because of injury or death to persons or damage to property caused by the condition, use or operation of the Equipment [the Truck]..."  (Costantini Decl. Exh. 7.)  Therefore, Pinnacle argues that CI should be obligated to insure against Pinnacle's claim over Carela.  The Court shall deny this request at this time.  Because Pinnacle and Carela share the same counsel, it is a conflict of interest for Pinnacle to seek indemnification from Carela.  As this claim will be dismissed without prejudice, Pinnacle is free to raise it another time.

22

**D.      Whether Pinnacle's Trailer is a Covered "Auto"**

Pinnacle argues that its trailer is an insured auto under the Connecticut Indemnity policy.

The Court agrees.  The policy designates a covered auto as being "those 'autos' you own (and for

Liability Coverage any 'trailers' you don't own while attached to power units you own)."

(Costantini Decl. Exh. 13.)  Carela was hauling Pinnacle's trailer at the time of the accident.

Accordingly, Pinnacle's trailer is a covered auto subject to Liability Coverage under the policy.

**E.      Default Judgment Against Sanchez Reddicks**

Finally, Connecticut Indemnity seeks entry of default judgment against Reddicks for

failure to plead or otherwise defend.  This request is granted.  *See* Fed. R. Civ. P. 55.  Default

judgment will be entered against Reddicks in favor of Connecticut Indemnity.

<u>**CONCLUSION**</u>

For the foregoing reasons, Connecticut Indemnity's motion for summary judgment is

**DENIED** and Carela and Pinnacle's cross-motion for summary judgment is **GRANTED**.  An

appropriate Order accompanies this Opinion.

s/William J. Martini

**Dated:** August 15, 2007                        _____

                                                         **Hon. William J. Martini, U.S.D.J.**

23